Good morning, Your Honors. May it please the Court, I'll take a few minutes to get your file together. And for my benefit, would you raise your voice? Absolutely. I'd like to begin... Can you identify yourself? Sure. I'm Scott Shaw on behalf of the appellant. I'd like to begin by briefly discussing some of the industry background and context upon which this case and some of the cases that the Court has just heard are now before the Court. And I think it's important in understanding this background and the context because it will relate directly to the issues in this case and then also the errors made by the trial court with respect to the damages analysis. This case involves a design that's printed on fabric. And as the Court knows, there's many different types of fabric. My shirt today is cotton. There's rayon. There is cashmere. And the price of cotton is less than cashmere and rayon, etc. Fabric companies who print fabric designs will take these raw textiles, whether it be rayon or cashmere, and they'll print a design on it. The fabric companies literally have thousands, hundreds of thousands sometimes, of designs that they print on the fabric. United, the plaintiff in this case, is one of those fabric companies. It sells the different types of fabrics to customers such as one of my clients, Newport Apparel. Newport Apparel, in the scheme of this industry, is a company that designs garments. They design dresses and blouses. And they resell those garments, those clothes, to a retailer who can then sell them to the end user and will then buy the clothes at the retail level. When a client like Newport Apparel receives an order from its customer, from the retailer, it then needs to, because the retailer likes the particular dress or the blouse, the garment manufacturer needs to go find the fabric. It needs to find the type of fabric, and it needs to find a design that it likes on the fabric. And when they purchase the fabric, the price for the fabric that they pay is based on a number of factors. The number of yards that they order, the customer relationships, where it's going to be printed. One thing that's not based on is the design itself. The design itself that's printed on the fabric, whether it be a stripe, a polka dot, a paisley, or a flower, isn't dispositive. For example, if a customer in New York today was making dresses, and it was ordered 10,000 yards of rayon fabric with a stripe pattern from United, the price would be the same if they ordered a floral or a paisley pattern. Now, taking a step back, these designs, again, there's thousands and thousands, they're a dime a dozen. They range from anywhere between $300 to $600 is what United would typically pay for a design. And unlike other artistic works that are protected by copyright, that demand more or less depending on the artistic value of the particular artwork, these textile designs are really more like commodities. They're used in something that's going to be an end product, and there's no fluctuation in price of the particular design. What's happening now in the industry is that companies like United, and companies like L.A. Print X, and others, local companies, have found a way to take these designs, these textile designs, whether they purchase them or they create minor variations of florals and things of that nature, they bundle them up, and they put them in 10, 20, 30 designs. They package them up, because they don't have to pay an individual registration fee, which would be time-consuming, and it would be cost-prohibitive for them to do that. So they bundle them up, they register them in a group, and they represent to the copyright office that these are purported collections. Then what they do, which is consistent with the industry practice, is that they take samples or swatches of these fabrics individually, and they offer them to their customers when they need to fulfill an order to make a dress or a blouse. Now, through the sampling process and the distribution process, inevitably what's happening is that these designs are ending up overseas. What we're seeing is that companies such as United are becoming exponentially more profitable by filing lawsuits rather than actually selling fabric. They're able to disgorge, potentially, all the gross revenue from an innocent retailer who merely purchased a garment, when in fact the design that is technically the infringed design represents only a small fraction of the overall price and the reasons for the profits of a particular dress or a blouse. This current model is not consistent with what Congress intended with the Copyright Act, and it's frankly causing a backload in the central district where there's literally hundreds and hundreds of these cases being filed, and there's no end in sight unless the value of a $500 design is somehow proportional with respect to damages. Now, in this appeal, the trial court made three errors with respect to damages. The first error that I wanted to discuss and which is briefed is the instruction regarding willfulness. I'm not going to repeat the instruction verbatim because it's in the briefs and it's in the record, but the instruction is entitled, Modifications are evidence of infringing conduct. Can you explain why willfulness makes a difference here since there wasn't a statutory damage involved? Sure, absolutely. Willfulness makes a difference in this case and, I believe, in almost every trial where you are improperly instructing the jury on a point of law that goes to intentional and knowing infringement. And it ties in directly to damages. I know in the record there was some discussion about whether or not overhead costs can be deducted even in a case of willful infringement. And at least in the attorney's fee motion, the trial court ultimately came to the correct conclusion in that overhead costs may still be deducted despite a finding of willfulness. Nevertheless, it's our position that an improper willfulness instruction in this context when we're talking about the disgorgement of the defendant's profits, it makes a difference. Whether the jury is viewing the disgorgement from the lens of this is an innocent retailer or whether this is a knowing and intentional retailer that violated the plaintiff's rights. Do you think it potentially could have affected how the jury looked at your client as opposed to any specific legal prejudice? Is that what you're saying? I think there's a couple problems. One is just the nature of an improper instruction on willfulness and that it improperly taints the jury in finding that there would be more profits to be disgorged or profits at all, for example, the retailer Lane Bryant. The other problem is it dictates an automatic finding of willful and knowing infringement by all the defendants when that just wasn't the case. I mean, based on this hypothetical modification. Okay, so it's a taint issue. I don't want to hold you up on this. So let's go on to your next point. Okay. The second error, which then ties back directly into the reason for providing, Your Honors, with the industry background, is the court's outright preclusion of any testimony regarding factors other than this copyrighted fabric design and apportioning damages. The court, in the record, referred to the analysis as comparing apples with oranges when, in fact, comparing factors other than the copyrighted design and isolating out the copyrighted design is exactly what Section 504B contemplates. How were you prejudiced by this? Defendants intended to argue at trial that the primary factor was the design of the garment, of the blouse itself. The primary factor with respect to retail profits from the sale of these blouses. Again, the particular design that was printed on the blouse may be one small part of the profits. It may not be any part of the profits. In fact, we've seen cases where there are minor deviations from one particular design to another, to another, and to another.  We would argue that the design is attributable to no portion of the design relates to the profits of the end sale of the retailer. Such as the cut of the blouse? Is that what you're talking about? Sure. There will be the cut, the color, the trim, the brand, the particular store recognition. I mean, some consumers only go into particular stores they like. The store placement, the season, the trends. There's a whole host of real-world, real-life factors that drive the profitability analysis that determine whether the blouse is going to sell for a particular price and if they can buy it for a particular price. Missing among these factors is the particular design. It's just not a factor. In fact, what the trial court did in precluding the defense from even arguing any of the other factors, which clearly it was the defendant's burden to argue, but they never had an opportunity to do so because the court cut the defendant short and said we're not going to do that. We're not going to allow any apportionment arguments. Counsel? Judge Gould, if I could interject to make sure I'm not misunderstanding the facts. Did the court give a remedy based on the gross sales of the garments with this fabric without deductions for things like cost of rent for the storefronts or personnel cost, payroll cost? Is that what happened? That did, and, Your Honor, that's actually my third point, which is the third error, which was the court's exclusion of overhead as well. The point I was addressing first, however, was the apportionment analysis, which is slightly different. What about Arkay's Frank music, which seems to disaggregate the apportionment analysis? It says, well, even though the value of the musical was the same with or without the allegedly infringing song, that's not how we analyze apportionment. So your argument, if I understand it, is the value of the dress was the same with or without the infringing design, but Frank music suggests it doesn't matter. We still say that the design has some value, or we can attribute some value to that. Sure, and I pointed to a number of factors. I think there's two sides to the same apportionment coin. One is the value of the particular work, in this case the fabric design, which I think through sort of understanding the industry background, we can see that it's of relatively minimal importance. And the other side of that apportionment coin is all these other factors. So on the one side you have the copyrighted design, and the other side you have all these other factors. The trial court in this case precluded, just outright precluded, the defendants from making any argument as to either of those factors. There was no, using the coin examples, so to speak, there was no coin inserted. The jury never was afforded the opportunity to consider argument or evidence of apportionment of any sort. And I think that even just taking a step back from a policy standpoint, that's just plain wrong. I mean you don't have hundreds of thousands of dollars, and you don't award a windfall to the plaintiff when their $500 copyright was nearly distributed by a retailer, without any evidence of secondary liability. Let me ask you a question to make sure I'm thinking about the apportionment correctly. Let's say that someone had a copyright on design of buttons or a zipper, and somebody makes a dress and it has knockoff buttons or a knockoff zipper as part of it, and on the dress sells for $2,000, and maybe the zipper component costs $5. If the zipper maker sues for infringement, what do they get out of the revenues on the dress? And the hypothetical is not so much different than the actual facts of this case. And I think the law, you know, we still need to apply the law as to each factual situation. So assuming that a zipper or a button could be copyrightable, which probably couldn't because it would be functional, but assuming that you had a small element on an overall dress that sold for say $2,000, presumably that would be due to the brand. But assuming that the portion was copyrightable and the button was on the garment, was sold to the retailer, the plaintiff in that case would, in the initial instance, have the burden of showing the gross revenues as to the overall work. There's no way to show the gross revenues as to the button itself or the zipper. And defendants would then have the opportunity and should be given the opportunity to present argument that the button was of minimal importance and that's the first side of the apportionment coin I discussed. The defendants should also have the ability to argue that all these other factors that I discussed contributed to the profit in the $2,000 sale, not the copyrighted item. I need to... So you're actually over time. Okay. But we'll give you, because we asked you a lot of questions, we'll give you a minute in rebuttal. Okay. Thank you. Yeah, the only other issue I wanted to discuss was overhead, the exclusion of any evidence related to overhead. Thank you. Good morning again, Your Honors. Steven Doniger, appearing on behalf of the Respondent. May it please the Court. The trial court got it right and the jury got it right. I don't disagree with counsel that a defendant has the right, in fact the obligation, to put on evidence of apportionment and argue apportionment to the jury. I don't disagree with that. I do, however, disagree first with the assumption, counsel said defendants wanted to argue this to the jury. There is nothing in the argument that stopped the defendants from making that argument. There's nothing that happened, and there's nothing in the record, that defendants were excluded from holding up the garment and saying, look at all these different factors. You know, here's this, this, this, this, this. Of the profits generated, you know, the jury can make a determination. Now I have a footnote on that, and I'm going to get back to that in just a moment. But what I want to point out... There's no evidence in about how the garment sells with a different fabric. That's an excellent question. It's an excellent question. And the problem is that there is no competent evidence offered. The way that the cop, and if you'll allow me just a moment to illuminate that point, if you look at the structure for determining profits, it's actually pretty simple, right? The plaintiff has the burden of showing revenues from the sale of the defending garment. The burden shifts to the defendant to show deductible expenses and apportionment. Simple. So once the plaintiff shows the revenues from the sale, and again, if you're talking about sale at retail, you've got thousands and thousands of customers buying these garments for whatever reason they're buying the garments, and then the burden shifts to the defendants to show that only a small part of that reason why they bought the garments is the design. And in a number of cases I've worked on, this has been the subject of expert testimony because you and I don't know what percentage of customers out there are buying for whatever reason. In this case, the evidence the judge did not allow the defendants to put on was the testimony of a garment manufacturer with no evidence that there's any experience in retail sales, no consumer surveys, nothing, to give that person competence, foundation, to offer what was effectively expert testimony about why consumers buy and what percentage of the sale of those garments at retail is attributable to the use of the garment. I agree with you. Defendants have an absolute right to put on that evidence. The problem is there is no competent evidence offered at trial, and the judge was completely within its discretion to say, no, you don't get to testify to that. I thought the testimony was something like we sell this garment, the same shape or the same cut with a different fabric, and it sells for $200 rather than the $100 that the one with the allegedly infringing design sells for. What's wrong with that testimony? I don't think that was the testimony, but the bottom line is what the garment manufacturer sells the garment to the retail store for is a very different question from how you would compare that garment's retail sales to the retail sales of this garment. I've handled it. Just in July of this year, I took a case to trial in one of these fabric cases involving a collection of four dresses sold to Target. The dresses were identical, identical, except for the design on them. And when you looked at the average profitability per dress, there were some that sold, they bought 8,000 of, they sold them all. There were some that bought 12,000 of, they sold them all. There were some that bought 16,000 of, they sold them all. The infringing one, they bought 32,000 of. And when you compared the 32,000 to the next largest one, the profitability on those dresses was doubled. In other words, it makes a huge difference to profitability at retail what design is used. And the problem is, I know that's not on the record here, but that's exactly the point is that there's no evidence in the record from which a jury could do anything more than speculate. And to say, well, I've sold other dresses with the same body style and different designs, so what? I mean, in fact, we've had, we've deposed and offered a trial in a number of cases the testimony of buyers for retail stores who've unequivocally said, if I don't like the design on the dress, I'm not buying it. Show me a different design, show me a different textile pattern, you know. So they might lose is what I'm hearing you say. But I guess I don't see why the evidence of what the sale was, and it was both to wholesalers. It was the sale to Dillard's versus sale to Lane Bryant. So they were both from the manufacturer, I guess, to the retailer. And my, you know, the design had no effect on how much the wholesaler made. What was wrong with that evidence? You're saying that it's irrelevant? No, I'm saying, first of all, it's counterintuitive. The design does have an effect on how much the retailer makes, because if they, sorry, the vendor makes, because if the retailer doesn't like the design, they're not going to buy it. If they don't think they can sell it to their customers, they're not going to buy it. So absolutely it does. But my point really is that it's, while I don't think there's any error, even if there is an error, it's an error without consequence. Because the statutory scheme for determining profits is you take the retail sales number, defendant has the burden of then showing apportionment. And there's no competent evidence that the vendor, the garment manufacturer, possibly could have offered as to what percentage of the retail sales were driven by the design. There's no possible evidence that it could have offered. You know, I would further note that under the Nintendo case, it's also been well settled in the circuit that where the different factors are so intertwined that you can't meaningfully separate them, that the plaintiff also has the presumption that all of the profits are attributable. The whole scheme of the Copyright Act is really designed to make sure that no one should profit from the unauthorized sale of infringing garments. And that means that even between an innocent infringer and the owner of the work that was used without authorization, the profits should be given. And it's been said over and over and over again in this circuit, it's in fact in the Code, in the Copyright Act, that the burden is on the defendants, and if they don't meet their burden, if they don't discharge their burden, the plaintiff gets the profits. Because you'd rather err on the side of giving the plaintiff what defendants would like to call a windfall versus allowing an infringer to keep unauthorized products. So could you address the overhead issue? Because that part of the case, of your side of the case, bothered me that the court rejected the testimony of that witness on the cost structure of the stores. And for reasons that would seem to me would more go to weight than admissibility. In other words, there could be differences or lack of detail that could be argued that would require some modification that would be made to her figures. But how is it that the plaintiffs can recover the gross revenues on, let's say, dresses sold without taking into account the cost of the rental for the store space or the cost of the payroll for the people who sell the dresses? Of course, I'm happy to address that. And in fact, in my opinion, this is one of the most important issues in this case. And again, it has to do with discharging the burden of proof. There's two points I'd like to make on that. And the first has to do with discharging the burden of proof. The defendants have a burden, and the court correctly referenced the Frank Musa case. The defendants have a burden of establishing a nexus. Now, it doesn't mean, unlike what defendants try to argue in their brief, it doesn't mean that they have to go into store level and say, you know, this is valid, this isn't. But there's an initial burden of even showing categories of overhead that are related to the sale of a garmented issue. There was a Seattle Times article a couple years back about Lane Bryant, about that Lane Bryant was being sued by a number of employees because it was being required to, the employees were required to buy clothing from there without any compensation, and there's a whole lawsuit about it. If there was a payout, if there were legal fees associated with that, all of that gets wrapped in to their annual expenses when they say, well, here's what our profit margin is. I'm being a little unclear, so let me step back. The Lane Bryant representative took the stand, and as you saw from the record, was not prepared to do anything other than say, when you take all of our store operating overhead, here's our profit margin. The problem is when you take all that operating overhead, if they're opening up a new store that didn't even exist at the time, if they're constructing new stores and there's millions of dollars in construction costs, that's in that overhead, nothing to do with the sale of his garments. If there's a wage and employment case against Lane Bryant, and there's legal fees or settlement amount because they went into that year's budget, nothing to do with the sale of his garments. I understand there could be adjustments, but wouldn't you start off by looking at their cost of goods sold, and then making adjustments to that? Because otherwise, there is sort of a, I mean, a windfall might be an understatement to describe it. Well, in this case, the jury did in fact take off the cost of goods sold. That was an expense that was put in. It was clearly directly related to the sale of the items. Okay, great. The problem is that beyond that, Lane Bryant did absolutely nothing to then put forward evidence of the expenses that were related to the sale of the garments. The court only excluded the testimony of Lane Bryant's representative after she made it clear that she did nothing to parcel out overhead expenses that were related to his garments from overhead expenses that weren't. And she basically tried to do something that is specifically excluded by Frank Music. The Frank Music opinion reflects your sentiment exactly, and I agree with it. It says, you know, they say we don't doubt that some of the defendants claimed overhead contributed to the production of the infringing product. The difficulty we have is the defendant offered no evidence concerning how those costs contributed. Defendants contend the burden was met when they introduced evidence of their total overhead costs allocated on a reasonable basis. The district court apparently agreed. This is not the law in this circuit. Under Kamar International, a defendant additionally must show that categories of overhead actually contributed to the sale of infringing work. That's the Ninth Circuit's holding in Frank Music, and that's exactly what the defendants failed to do in this case. There's no, here's store-level overhead for just the stores that sold, or here's, you know, cost associated, there's nothing. There's nothing except here's our company's total overhead allocated on a reasonable basis, and that's clear in the record. So that's my first point. My second point, and I think it's equally powerful and conclusive, is that we were, under Rule 26, as we've discussed, defendants have the burden of showing the deductible expenses. That's their burden. They didn't provide any documentation, despite being asked for it in discovery, and despite a Rule 26 obligation, they didn't provide any documentation from which the plaintiff could take a look at their overhead expenses and say, no, this relates to a separate lawsuit, this relates, there's nothing. All they did was provide a summary of their percentage on a basis. And the problem is that unless the district court puts its foot down and says, if you don't provide the underlying data that allows for meaningful analysis of all that overhead by the plaintiff, allows the plaintiff to challenge it, it's excluded. It has to be. Otherwise, every defendant would just sandbag the plaintiff by saying, well, here's our overhead, try to compel it, push it out, and then say, well, here's our percentage that we claim to be our profits, without a plaintiff being able to challenge it. A district court has to have the discretion to say, if you don't provide documentation in support of your claimed overhead before this case goes to trial, such that the plaintiff can't meaningfully cross-examine the numbers you're putting up there, you don't get to put it on. You don't get to. The court has to have that discretion. I see my time is winding down. If there are any other questions I want to make sure about the validity of the trial court's ruling, I'd love to be able to address them. So let me just ask you if there's anything else I can discuss. I don't have questions. I think we're good. Thank you. Thank you so much. You have a minute left for rebuttal. Thank you. I will try to use my minute wisely. A judgment was entered against my clients for approximately $350,000 for the sale of their blouses. That incorporated what was found to be a copy of the plaintiff's $500 textile design. The court excluded all testimony and any evidence of overhead. The court did so based on its perceived error in the methodology, when, in fact, the court was really focused on what's referred to as the first step, which is the categories of overhead. And the second step would be applying the methodology. The categories applied. I mean, the overhead was incurred. You can't run a business without having overhead that's tied to the garments. This particular blouse was sold in practically every store. The second step would then be taking a percentage of the total sales and applying that based on the sales of the particular blouses at issue, and that would be the methodology. And that's a reasonable and fair methodology in this case. Counsel, did you attempt to introduce evidence of the percentage that would be applied to the sale of the dresses, of the blouses? I wasn't file counsel, but from the record, my interpretation is that what the court did was improperly take this out of the witness' hands, and the plaintiff's counsel and the court essentially tag-teamed the witness, voir dired the witness, and the testimony was never allowed to be introduced. And the percentage was the second part, which was the methodology, which although the court was referring to its criticism of the methodology, it really never got to that second step because it was so concerned with the first step, the categorization of overhead, when in fact defendants at least wanted to argue and should have had the opportunity to argue that all the categories applied. And on cross-examination, I've heard my opposing counsel raise a number of points that presumably would have been raised on cross-examination. To be sure I'm clear, are you stating that the trial judge said, I will not allow evidence of overhead in? The trial court precluded any evidence of overhead, correct. All right. I only have one final point that did not go to damages, and I will just note it for the record for more purposes of clarification, and it goes to the issue of copyright validity, which we haven't focused on today, and it relates specifically back to the C&J case, the prior case, where you have a collection of designs that are registered. Plaintiffs are interpreting the opinion and have done so to mean that the registration of this purported collection, which is afforded certain presumptions of validity of the collection, effectively, quote-unquote, registers the underlying designs, when in fact the individual works are not being individually registered and should not be afforded any particular individual presumptions as to the derivative status, the authorship, et cetera. But the presumption would apply to the copyrighted whole work that's being deposited and being registered and not the constituent element. Thank you. United Fabrics International v. Lane Bryant is submitted. Judge, could we take a short break before SOLAS? I believe SOLAS is submitted also, so I was just going to wrap it up. SOLAS v. Best Miracle Corporation is submitted, and we're adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: Nelson, Gould, Ikuta